[Civ. No. 31448.   Second Dist., Div. Three.   Aug. 11, 1967.]

DOROTHY D. ARBOLEDA, Petitioner, v. WORKMEN'S
COMPENSATION APPEALS BOARD, TRINIDAD
HOTEL et al., Respondents.

Dickinson & Colvin and Floyd L. Colvin for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Samuelsen & Bolson, Samuelsen, Bolson & Whitehead and N. R. Samuelsen for Respondents.

McCOY, J. pro tem.*—Avelino Arboleda, an employee of the Trinidad Hotel in Palm Springs, was killed in an automobile accident on Friday, the 13th of May, 1966. The application of his widow, Dorothy Arboleda, for an award of death benefits was denied by the Workmen's Compensation Appeals Board. The denial was based upon the application of the so-called "going and coming" rule. A writ was heretofore issued on her petition for review in which it is urged that the uncontroverted factual situation calls for the application of the "special mission" exception to the general rule.

Decedent was a room-service waiter at the hotel. His regular hours of work were from 7 a.m. to 3 p.m. Except during the slack season, he also ordinarily worked on Fridays and Saturdays from 7 p.m. until the end of the dinner hour at 9 or 10 p.m. It was the custom for the headwaiter to make up on Sundays a schedule of the hours to be worked by the waiters during the coming week. The schedule for the week which included May 13 showed the hours of the decedent to be from 7 a.m. to 3 p.m. daily from Monday through Saturday, and in

*Assigned by the Chairman of the Judicial Council.

addition from 6 p.m. to 11 p.m. on Friday and Saturday. During the course of a year decedent frequently was called to report for additional hours as the hotel's needs demanded.

On the day of his death the decedent worked from 7 a.m. until 3 p.m., returned home about 3:20 p.m. and left to return to the hotel about 5:50 p.m. At about 6 p.m. he was involved in a two-car accident and died at the scene. The accident occurred on the most direct route between the decedent's home and the hotel.

Decedent was driving his own automobile. The hotel did not pay any costs or expenses of transportation. It paid decedent only for the time during which he worked on the premises. It was a convenience to the hotel to have the decedent work the extra shifts rather than to hire another employee.

The petitioner contends that the decedent was "required to leave the premises for a three hour rest period" between shifts,[1] that this was for the benefit of the employer, and therefore he was on a "special mission" at the time of his death. The argument is that the "trip home and back placed decedent in a position of peril in which he would not have been, but for his employment for an additional period on that day."

The law as it now stands imposes on the employee the not inconsiderable risks of present day traffic conditions between his home and his place of employment. (See *Kobe* v. *Industrial Acc. Com.*, 35 Cal.2d 33 [215 P.2d 736].) It also imposes these risks upon him when he leaves the employer's premises during a lunch period. (See *Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35].) ▮▮▮ The law, in fact, imposes on the employee all of the risks which he encounters after he leaves the service of the employer, the place of work and its special risks, and goes beyond the dominion and control of the employer. (See *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com,* 39 Cal.2d 512 [247 P.2d 697].) In all of these cases it cannot be denied that the trip to and from the employer's premises places the employee in a position of peril in which he would not have been but for his employment. The Legislature has not seen fit to shift any of these risks to the employer.

▮▮▮ The so-called "going and coming" rule is premised on the theory that ordinarily the employment relationship is

[1]There is no evidence in the record that decedent was "required" to leave the premises.

suspended from the time the employee leaves his work to go home until he resumes his work. (*California Cas. Ins. Exchange* v. *Industrial Acc. Com.*, 21 Cal.2d 751, 754 [135 P.2d 158].) ▮ The Workmen's Compensation Act covers only those who sustain injury or death while the employment relationship exists. (*Greydanus* v. *Industrial Acc. Com.*, 63 Cal.2d 490, 492 [47 Cal.Rptr. 384, 407 P.2d 296].) Numerous exceptions to the general rule have been recognized where the circumstances show that it was intended that the employment relationship continue during a period of time when the employee is away from the employer's premises.

▮ The "special mission" exception to the general rule is applicable in a case where the evidence shows that the employee was on his way to or from the employer's premises as a special service to the employer. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 89 Cal.App. 197 [264 P. 514]; *London Guar. & Acc. Co.* v. *Industrial Acc. Com.*, 190 Cal. 587 [213 P. 977]; *Los Angeles Jewish etc. Council* v. *Industrial Acc. Com.*, 94 Cal.App.2d 65 [209 P.2d 991]; *Vivion* v. *National Cash Register Co.*, 200 Cal.App.2d 597 [19 Cal.Rptr. 602]; *Schreifer* v. *Industrial Acc. Com.*, 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832].) ▮ To be a "special service" to the employer the making of a trip by the employee to the employer's premises must amount to something more than merely going there to make his routine services available at the time and place of his scheduled work assignment. (*Los Angeles Jewish etc. Council* v. *Industrial Acc. Com.*, *supra*, 94 Cal.App.2d 65; *Schreifer* v. *Industrial Acc. Com.*, *supra*, 61 Cal.2d 289.)

In the case of *Los Angeles Jewish etc. Council* v. *Industrial Acc. Com.*, *supra*, 94 Cal.App.2d 65, an award of death benefits was affirmed. There the decedent was a librarian. His usual hours of employment were from 2 p.m. to 6 p.m. on Mondays through Fridays. The library scheduled special activities for a particular week. The decedent was informed that during that week he would be expected to attend evening activities, including activities on Saturday and Sunday. He attended the activities on the evenings of the week in question. On Saturday a member of the library board telephoned him and requested that he come to the library earlier than usual that evening to inspect and discuss certain purchases. He was struck by a car while en route to the library about one-half hour earlier than he had gone on the prior evenings. It was held that this especially early evening trip to perform

services which were a part of his daytime duties but extra-ordinary for evening work fell within the "special mission" exception.

In *Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d 289, an order of the Industrial Accident Commission denying compensation to a deputy sheriff was annulled. He was on 24-hour call and normally worked eight hours per day. A schedule of his hours was ordinarily posted on a bulletin board one day ahead. He was scheduled to work from 7 p.m to 3 a.m. on December 13, 1961. At 1 p.m. that day his superior called him at his home and instructed him to report for duty as soon as possible. He was injured in an automobile accident while en route to work. It was held that these circumstances brought him within the "special mission" exception. The court said (pp. 294-295) that even though his hours of work were irregular as compared with most jobs, his schedule for the day had been posted and in reporting to work hours ahead of his regularly scheduled shift he was doing more than merely making his services available at the place where they were needed. "Making the trip at that time was a special service. The telephonic order from his superior to report early was not the usual manner of scheduling duty hours. There must have been some special need for Schreifer's services at that time. The fact that a particular mission is encompassed within the terms of hire, even contemplated at the time employment began, is not determinative. Nearly every employment relationship contemplates that extraordinary needs may rise and must be met. 'Special' means extraordinary in relation to routine duties, not outside the scope of the employment. The commission erred in denying compensation."

█ Petitioner here comes squarely within the going and coming rule. "[T]he going and coming rule rests upon the basis that the employer-employee relationship lapses during the employee's off-duty absence from the job." (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. Appeals Board* (1967) 66 Cal. 2d 944 [59 Cal.Rptr. 622, 428 P.2d 606].) As the court said in the case just cited. quoting from 2 Hanna, The Law of Employee Injuries and Workmen's Compensation, page 175: "Whether deemed a suspension of the employment relationship or a cessation of service to the employer, the situation is one in which the employee steps out of the course of his employment for the off-duty period, and injuries during such a period, in the absence of special arrangements with the em-

ployer, fall under the ban of the 'going and coming' rule.''
Petitioner has not shown that he comes within any recognized
exception to that rule.

In the present case the decedent's hours were subject to
some irregularity as compared to most jobs and they were
perhaps inconvenient as compared to most jobs. His schedule
for the day of the accident had been set up on the previous
Sunday. In going to work at the hour scheduled for Friday
evening he was doing no more than preparing to make his
services available in accordance with the schedule. There was
no extraordinary need or request for his services as compared
to the usual need for his services on any other Friday or
Saturday night during the season.

A man who makes two round trips to his place of employ-
ment in a day is, of course, subjected to more traffic risks than
one who makes a single trip. A man who lives 25 miles from
his place of employment is subjected to more traffic risks in
going to and from work than one who lives two miles away. A
man who works a 6-day week is subjected to greater risks than
one who works a 5-day week. A man who leaves the premises
for lunch is subjected to more traffic risks than one who
brings his lunch. In none of these cases does the law provide
coverage because the employment relationship is suspended.
We cannot distinguish the circumstances here present. We can
but conclude that the appeals board properly applied the
general ''going and coming'' rule in the particular circum-
stances.

The order is affirmed.

Ford, P. J., concurred.

MOSS, J.—I dissent: I believe that Mr. Arboleda's after-
noon trip to and from home to take a rest between his two
daily work shifts was a ''service growing out of and inciden-
tal to his employment'' within the meaning of Labor Code
section 3600. This provision has generally been interpreted to
preclude compensation for injuries sustained while traveling
to and from work—the ''going and coming'' rule. (*Postal
Tel. Cable Co.* v. *Industrial Acc. Com.*, 1 Cal.2d 730 [37 P.2d
441, 96 A.L.R. 460].) However, since, in many cases, applica-
tion of this judge-made rule would defeat the purpose of the
workmen's compensation law, numerous exceptions to the
''going and coming'' rule have been recognized. (See 6 Stan.
L.Rev. 383, 384, (fn. 4).) One such exception has been estab-

lished under the rubric "special errand" exception. (*Schreifer* v. *Industrial Acc. Com.*, 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) "Special" does not necessarily mean that the work is unusual for the particular employee involved. (*Schreifer* v. *Industrial Acc. Com.*, *supra*, 61 Cal.2d 289 [deputy sheriff on regular shift occasionally called to come in early]; *Robinson* v. *George*, 16 Cal.2d 238 [105 P.2d 914] [after completion of regular delivery route, newspaper boy customarily on call for special deliveries]; *Fenton* v. *Industrial Acc. Com*, 44 Cal.App.2d 379 [112 P.2d 763] [duties of employee of California State Relief Administration included outside investigation as a "case worker"]; *Dauphine* v. *Industrial Acc. Com.*, 57 Cal.App.2d 949 [135 P.2d 644] [assistant to county forester normally worked in office but also made inspections of outside facilities].)

An examination of the cases which have held the "special errand" rule to apply shows that in each of them the trip of the employee had some connection with his employment other than the necessity of getting to and from work. (Several of these cases are summarized in *Schreifer* v. *Industrial Acc. Com.*, *supra*, 61 Cal.2d 289 at pp. 292 to 294.) Having in mind "this state's liberal policy of construction in favor of the employee," any doubt as to whether the "going and coming" rule prohibits compensation in this case should be resolved in favor of Mrs. Arboleda. (*Leonard Van Stelle, Inc.* v. *Industrial Acc. Com.*, 59 Cal.2d 836, 841 [31 Cal.Rptr. 467, 382 P.2d 587].)

Mr. Arboleda was killed while traveling to his place of employment to work an evening shift after having already completed an eight-hour shift earlier that day. He worked the evening shift during the hotel's busy season for the convenience of his employer. He was called upon to report for additional hours of work as the hotel's need demanded. His return to work that Friday was unusual in the sense that he did not work every night but only when the hotel was busy. When Mr. Arboleda returned to work for the evening shift following a three-hour afternoon respite he did not enjoy the same freedom of timing that is associated with ordinary travel to and from work. He returned home at 3:15 or 3:20 p.m. tired from having completed an eight-hour shift. He had time only to bathe and nap before returning for the night shift. There is nothing in the record to indicate that Mr. Arboleda was provided with a place at the hotel to rest during the afternoon

interval.[1] We can reasonably assume that he needed a rest before working an additional four hours in the evening. It was convenient for the employer that the same waiters return for the night shift. Therefore, it is fair to say that Mr. Arboleda went home in the afternoon for the convenience of his employer and that the afternoon trip grew out of and was incidental to his employment.

I believe that this case is controlled by *Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d 289. It is immaterial, in my view, that the "special errand" in that case was rendered in response to a telephonic request on the day that the injury occurred rather than as in this case, pursuant to a work schedule posted five days before the accident which resulted in the employee's death. It is true that Mr. Schreifer was asked to report for work "as soon as possible," however, the opinion does not indicate that he was in an unusual hurry to get to work when the accident occurred. It cannot be said, therefore, that the shorter advance notice which he received resulted in greater additional risk to him than the five-day notice given to Mr. Arboleda. It is also true that Mr. Schreifer apparently did not report early for work with the same frequency that Mr. Arboleda worked the night shift. However, as noted earlier, the special errand exception can apply even though the errand is not unusual for the employee involved. Therefore, I do not think this point of difference between the two cases is material.

I would reverse the order of the Workmen's Compensation Appeals Board.

Petitioner's application for a hearing by the Supreme Court was denied October 5, 1967. Peters, J., was of the opinion that the petition should be granted.

---

[1] A good part of the hearing was taken up with testimony on the issue of whether Mr. Arboleda's death was caused by his intoxication. Since the decision did not determine this issue we deem it to have been decided adversely to the employer and the compensation insurance carrier. (Lab. Code, § 5815.)