[S.F. No. 24882. June 23, 1986.]

MODESTO PEREZ, a Minor, etc., Plaintiff and Appellant, v.
VAN GRONINGEN & SONS, INC., Defendant and Respondent.

964

**COUNSEL**

W. J. Cossette for Plaintiff and Appellant.

Mackenroth, Seley, Chaffin & Anwyl, Mackenroth, Seley & Anwyl and Claudia Robinson for Defendant and Respondent.

**OPINION**

**REYNOSO, J.**—When a tractor operator is performing his normal task of disking, but has invited an unauthorized rider onto the tractor, is he still acting within the scope of employment? The answer is "yes."

In this personal injury action, plaintiff Modesto Perez, the rider of the tractor, appeals from a judgment entered on a jury verdict in favor of defendant, Van Groningen & Sons, Inc. Perez contends that the trial court erred in refusing to instruct the jury as a matter of law that Van Groningen's employee, the tractor driver, was acting within the scope of his employment at the time of the accident. We agree and reverse.

I.

At the time of the accident, Perez was living with an uncle. Another of his uncles, Eulalio Garcia, the employee of defendant, had been told to disk defendant's orchard, a process of driving a tractor through an orchard pulling a disking attachment. As he was leaving, Garcia asked Perez to come along to learn how to operate a tractor. While he disked the orchard, Garcia allowed Perez to ride with him on the tractor. Perez sat on a raised toolbox because the tractor had only one seat.

John Van Groningen testified that a company rule forbade anyone but the driver to ride on a tractor because of the potential danger. He had informed Garcia of the no passenger rule two years before the accident when Garcia had started the disking job. Garcia, on the other hand, testified that while Van Groningen was the person from whom he took instructions, nothing had been said about passengers. The accident occurred when a low-hanging

branch knocked Perez off the tractor and into the disking attachment. Perez lost the bottom portion of one leg and the use of an arm when he was run over by the disk.

Perez sued defendant under the doctrine of respondeat superior. Based on the evidence, Perez sought an instruction that Garcia was acting within the scope of his employment as a matter of law and that his negligence must be attributed to defendant, his employer. Defendant opposed this instruction, contending that in attempting to teach Perez to drive a tractor, Garcia was not acting in the scope of his employment because he was violating a company rule and acting for totally personal purposes. The trial court refused to instruct the jury that Garcia was acting within the scope of his employment as a matter of law. Instead, the court put the issue to the jury as a factual question.[1]

During its deliberations, the jury asked the court for further instruction on the meaning of "scope of employment" and "scope of authority." The court informed the jury that it had already received adequate instruction on this point and that the two terms in question were synonymous. Next, the jury announced that it had been unable to decide this issue. As the foreman explained: "We're all pretty much in agreement until we come to whether or not Mr. Garcia was within the scope of authority and employment. . . . Well, we asked for the definitions . . . and . . . we were given the same things we had when we went in there, which we read, and it comes down to an interpretation of what those things are, and . . . some of us feel that Mr. Garcia was outside and some feel that he was inside, and that's our problem, so I'm really not informed enough to know if there's something that's going to change that unless there's something you can give us. . . ." The court requested the jury to deliberate further. Eventually, the jury returned a special verdict on which it answered "no" to the first question:

---

[1]The court instructed the jury in relevant part: "It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's employment. Such conduct is within the scope of his employment if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's employment." (BAJI No. 13.01.)

"When an agent is acting on his principal's behalf and within the scope of his authority, if while so engaged, he also and incidentally attends to some matters strictly personal to himself, his doing so does not break the agency relationship so as to release the principal from the responsibility for the agent's conduct. [¶] On the other hand, when an agent departs or substantially deviates from the business or service of his principal and [pursues some activity or object not for his principal and] not reasonably embraced within his employment, the principal is not responsible for anything done or not done in such activity. [¶] This is true even though in such personal affair the agent uses the principal's property and causes an injury through facilities that have been entrusted to him by the principal." (BAJI No. 13.02.)

"Was the defendant negligent?" Perez appeals from the judgment entered on that verdict.

## II.

### *Respondeat Superior*

■■■ The issue is whether acceptance of an unauthorized passenger may take Garcia's acts out of the scope of his employment because such an act is not a risk arising out of the employment. Our review of the law convinces us that Garcia was at all times acting within the scope of employment. He was principally engaged in disking, his employer's business.

■■■ Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment. This doctrine is based on "'a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business.'" (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988], quoting Prosser, Law of Torts (3d ed. 1964) p. 471.) Three reasons have been suggested for imposing liability on an enterprise for the risks incident to the enterprise: "(1) [I]t tends to provide a spur toward accident prevention; (2) it tends to provide greater assurance of compensation for accident victims, and (3) at the same time it tends to provide reasonable assurance that, like other costs, accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them." (5 Harper et al., The Law of Torts (2d ed. 1986) § 26.5, p. 21, fns. omitted; see also *Johnston* v. *Long* (1947) 30 Cal.2d 54, 64 [181 P.2d 645] ["The principal justification for the application of the doctrine of *respondeat superior* in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business."].)

■■■ In some respects, the rationale underlying respondeat superior is similar to that underlying the Workers' Compensation Act. Both fields of law allow recovery for the injured party irrespective of proof of the employer's fault. ■■ ■■■ ■■ Both are concerned with the allocation of the cost of industrial injury. (*Hinman, supra,* 2 Cal.3d at p. 962, fn. 3.)[2] ■■■ "The proper test [for respondeat superior] bears far more re-

---

[2]We note that "the test under the [workers'] compensation law of 'arising out of and in the course of employment' (Lab. Code, § 3600), is not identical with the test of 'scope of employment' under the *respondeat superior* doctrine. . . ." (*Hinman, supra,* 2 Cal.3d at p. 962 fn. 3.) Thus, although worker's compensation cases can be helpful in determining the employer's vicarious liability for its employee's torts (*id.,* at p. 962), they are not controlling precedent "when liability is predicated upon respondeat superior principles." (*Caldwell* v. *A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr. 494].)

semblance to that which limits liability for worker's compensation than to the test for negligence. The employer should be held to expect risks, to the public also, which arise 'out of and in the course of' his employment of labor." (5 Harper et al., *supra,* § 26.7, pp. 28-31.) Thus, under California law, an employer is liable for risks "arising out of the employment." (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 843 [205 P.2d 1037]; *Carr* v. *Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 657 [171 P.2d 5].)

■ A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619 [124 Cal.Rptr. 143].) Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise. (*Hinman, supra,* 2 Cal.3d at p. 960.) ■ The enterprise in question, we have noted, is the work—the disking—performed by the employee.

■ To recover under respondeat superior, plaintiff bears the burden of proof to demonstrate that the employee's tortious act was committed within the scope of his employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].) ■ Under this doctrine, "[t]he cases which have considered recovery against the master for accidents occurring within the scope and during the period of employment have established a general rule of liability with a few exceptions for cases where the employee has *substantially deviated from his duties for personal purposes.*" (*Hinman, supra,* 2 Cal.3d at p. 960, italics added.) ■ Generally, the issue of scope of employment is a question of fact. (*Ducey, supra,* at p. 722.) However, the issue becomes a question of law when the facts are undisputed and no conflicting inferences are possible. (*Hinman, supra,* at p. 963.)

■ In this case, it was uncontroverted that at the time of the accident, Garcia was driving defendant's tractor in its orchards and was performing an assigned task during working hours. In fact, Garcia had operated tractors the last two years of his three-year tenure with defendant while working in the orchard division. When Perez asked the court to instruct that Garcia was acting within the scope of his employment as a matter of law, however, defendant argued against the proposed instruction. Defendant claimed that Garcia violated company instructions by taking an unauthorized passenger

for the purpose of teaching him to drive, and that his conduct benefited only him and not defendant. The trial court ruled that the question of scope of employment was an issue of fact for the jury.

The trial court erred. As long as it is clear that at the time of the injury the employee was following his employer's instructions to disk the orchard, the fact that he was not authorized to take a passenger is immaterial. In *Meyer* v. *Blackman* (1963) 59 Cal.2d 668 [31 Cal.Rptr. 36, 381 P.2d 916], for example, plaintiff's decedent was killed in an accident when defendant's employee drove through a red light. Defendants argued that respondeat superior should not apply because the employee had no authority to invite passengers. We rejected that argument, stating: ". . . it is well known that employee-drivers often commit such breaches of duty by carrying unauthorized passengers, and so long as injury to the rider occurs while the driver is carrying out his employer's business, the employer must be held liable under the familiar principle of liability for a servant's torts committed as part of the transaction of the master's business, *even though the injury may accrue coincident with behavior contrary to the master's express orders.*" (*Id.*, at p. 679, italics added.) Therefore, proof of an employer's authorization of his employee's act is not necessary to show that the act was within the scope of employment. (See, e.g., *Foss* v. *Anthony Industries* (1983) 139 Cal.App.3d 794, 801-802 [189 Cal.Rptr. 31] [employer held liable as a matter of law under respondeat superior for employee's negligent driving despite the fact that employee was instructed not to drive employer's truck].)

Defendant in this case also argued that Garcia's negligence should not be imputed because his act of taking an unauthorized passenger did not benefit defendant. There is no requirement that an employee's act benefit an employer for respondeat superior to apply. In fact, an employer can be liable for his employee's unauthorized *intentional* torts committed within the scope of employment despite lack of benefit to the employer. In *Carr* v. *Wm. C. Crowell Co.*, *supra*, 28 Cal.2d 652, the trial court directed a verdict for the employer on the issue of respondeat superior. On appeal, the employer argued that its employee was not acting within the scope of his employment when he threw a hammer at plaintiff during an argument on the job because this act did not further its interests as an employer. We reversed the directed verdict for the employer, holding that it was sufficient that the plaintiff's injury resulted from a dispute arising out of the employment. (*Id.*, at p. 654.) The plaintiff need not demonstrate that the assault was committed for the purpose of accomplishing the employee's assigned tasks. (*Ibid.*) Since such an injury is one of the risks inherent in the enterprise, the employer could be held liable for its employee's battery. (*Id.*, at pp. 655-656.)

Similarly, in *Fields* v. *Sanders* (1947) 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525], the trial court ruled as a matter of law that the employee was acting within the scope of his employment when he intentionally hit plaintiff with a wrench. The fight occurred after the employee's truck had struck plaintiff's car. We upheld the trial court's ruling, stating that the proper inquiry is not "'whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal. . . . But the fact that the questioned act was unauthorized or, if wrongful, that it was not committed in order to further the interests of the principal, will not show such a departure from the service of the principal as will absolve the latter if the act was committed while the agent was still occupying himself with the principal's business within the scope of his employment.'" (*Id.*, at p. 839, quoting *Andrews* v. *Seidner* (1942) 49 Cal.App.2d 427, 430 [121 P.2d 863].) It necessarily follows that an employer will also be liable for the unauthorized negligent acts of his employee committed in the course of his employment without any requirement of proof of benefit to the employer resulting from the employee's acts.

Furthermore, the fact that Garcia may have been combining personal business with his employer's business is not relevant in this case. "[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." (*Lockheed Aircraft Corp.* v. *Ind. Acc. Com.* (1946) 28 Cal.2d 756, 758-759 [172 P.2d 1]; accord, *Lazar* v. *Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, 466-467 [195 Cal.Rptr. 890].) Here, as we have noted, Garcia was clearly performing an assigned task of the employer by disking the orchard, an act in furtherance of his employment. The presence of an unauthorized passenger was insufficient to take Garcia outside the scope of his employment since he was still carrying out his employer's business. (*Meyer* v. *Blackman, supra,* 59 Cal.2d at p. 676.)

Defendant anticipated the risk of injury inherent in carrying a passenger on a tractor and sought to minimize the risk with its no passenger rule. (7) However, "A master cannot escape liability merely by ordering his servant to act carefully. If he could, no doubt few employers would ever be held liable." (Prosser & Keeton, The Law of Torts (5th ed. 1984) p. 502.)

■ The law imposes the risk of injury arising out of the employment on defendant as a cost attendant to doing business. Here it was undisputed *that* the employee was performing a task within the scope of his employment at the time of the injury to Perez. Therefore, the issue of scope of employment should have been determined as a matter of law. The trial court's

failure to properly instruct the jury was reversible error. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 963.)

*Negligence as a Matter of Law*

■ For purposes of retrial, we briefly address the second contention of Perez that the trial court erred by refusing to instruct the jury that Garcia was negligent as a matter of law. In general, the issue of a defendant's negligence presents a question of fact for the jury. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36] [foreseeability of the risk is a question of fact for the jury]; *Beck* v. *Kessler* (1965) 235 Cal.App.2d 331, 336 [45 Cal.Rptr. 237]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 492, p. 2755.) A defendant's negligence may be determined as a matter of law only if reasonable jurors following the law could draw only one conclusion from the evidence presented. (*Gray* v. *Brinkerhoff* (1953) 41 Cal.2d 180, 183 [258 P.2d 834].)

Here, the evidence supports a finding that Garcia acted negligently. However, it is difficult to say that only one conclusion could reasonably be drawn from the evidence. Therefore, the trial court properly refused to instruct the jury as a matter of law that Garcia was negligent.

The judgment is reversed.

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., and Loncke (Rudolph R.), J.,* concurred.

**LUCAS, J.**—I respectfully dissent. Plaintiff's injuries directly resulted from an employee's conduct *expressly forbidden* by defendant employer. Under these circumstances, defendant was not liable under respondeat superior principles.

As the majority concedes, the record would support a finding that the employer had forbidden employees to allow any passengers aboard tractors because of the obvious dangers involved. Nonetheless, employee Garcia allowed plaintiff, his nephew, to ride while seated on a raised toolbox in the tractor. Quite predictably, an accident occurred when plaintiff was struck by a low-hanging branch. The majority holds, contrary to the finding of the jury in this case, that Garcia was at all times acting within the scope of his employment. The majority emphasizes that Garcia was busy with his usual work when the accident occurred. But the accident did not occur by reason of Garcia's attention to his authorized work—it arose because Gar-

---

*Judge, Sacramento Municipal Court, assigned by the Chairperson of the Judicial Council.

cia, for personal reasons, deviated from his employment and violated an express company rule forbidding passengers aboard tractors. Under these circumstances, respondeat superior liability should not be imposed.

The majority acknowledges that no liability may be imposed in cases where the employee "has substantially deviated from his duties for personal purposes." (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988]; see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 166, pp. 765-766, and cases cited.) The majority also realizes that "Generally, the issue of scope of employment is a question of fact." (*Ante,* p. 968; see *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [159 Cal.Rptr. 835, 602 P.2d 755].) Nonetheless, the majority believes that here, scope of employment was established *as a matter of law* because the accident occurred while Garcia was engaged in his assigned task of disking the orchard. In this regard, the majority cites *Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 679 [31 Cal.Rptr. 36, 381 P.2d 916], for the proposition that "the fact that [an employee] was not authorized to take a passenger is immaterial." (*Ante,* p. 969.) The *Meyer* case is wholly inapposite.

In *Meyer,* there was no indication whatever that accepting the passenger contributed in any way to the subsequent collision with another car. The sole question in *Meyer* was whether the act of accepting a passenger, contrary to company policy, necessarily took the employee/driver out of the scope of his employment. We properly concluded that if the employee continued to carry out his employer's business, the mere acceptance of a passenger was immaterial to the issue of scope of employment.

In my view, a contrary rule should govern where the employer's rule is in the nature of *a safety order* ignored by the employee, and where the accident could have been avoided had the order been obeyed. In other words, wilful disobedience of such an order should be deemed a "substantial deviation" from employment within the *Hinman* exception to respondeat superior liability.

I would affirm the judgment.