[No. B055446. Second Dist., Div. Three. Feb. 19, 1992.]

JOSE TORRES, Plaintiff and Appellant, v.
MICHAEL REARDON et al., Defendants and Respondents.

COUNSEL

James H. Davis for Plaintiff and Appellant.

Callahan, McCune & Willis and Peter M. Callahan for Defendants and Respondents.

OPINION

CROSKEY, J.—Plaintiff and appellant Jose Torres (Torres) appeals from the summary judgment entered against him and in favor of defendants Michael and Ona Reardon (the Reardons). Because there is no evidence that Torres's injuries resulted from any act of negligence by, or attributable to, the Reardons, or that any circumstances existed that would impose upon them liability for Torres's injuries under the peculiar risk doctrine, the trial court properly granted summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

During the years of 1980 to 1988, Jose Torres was a self-employed gardener, doing business under the name of Jose Torres Gardening Service. From approximately 1984 until June of 1988, as part of his gardening business, Torres performed weekly general gardening services at several homes on Cricklewood Street in the City of Torrance, California, including the home of the Reardons.

Early in 1988, the Reardons began discussing with Torres the possibility of employing him to trim a 65- to 70-foot-tall tree located in their front yard. In mid-June of that year, it was agreed that Torres would trim the tree for a price of $350. Final arrangements for the trimming were made between Torres and Ona Reardon. The Reardons' next door neighbor, David Boice, was also present at the conversation in which the arrangements were made. Boice expressed concern at that time that care be taken in the cutting of a

large branch that overhung Boice's house to assure that the branch did not fall onto his roof.

At 11 a.m., on the morning of June 20, 1988, four days after agreeing to trim the Reardons' tree, Torres arrived at the Reardons' home with one helper, prepared to do the job. The Reardons were not at home when Torres arrived, or at any time while he was working. David Boice, the next door neighbor, was at home in his garage-workshop, building an electrical panel. (Boice was an electrical contractor by trade and had done electrical work on the Reardons' home.) Boice reminded Torres to take care that the large branch overhanging his house did not fall onto the roof, and he occasionally left his garage to observe Torres's work. Torres used a chain saw to cut the larger branches of the tree. At one point, Boice observed that Torres was not using safety lines, and asked why. Torres answered that he did not need them.

The branch that extended over Boice's house left the tree's trunk at a point approximately 25 feet from the ground and had a diameter of approximately 20 inches. When Torres was ready to cut it, Boice came outside to hold a rope that was tied to the branch, apparently with the intention of pulling the branch away from Boice's roof as it fell. Torres positioned himself on the branch next to the trunk and began to cut at a point just beyond where he was standing. Torres was wearing a safety belt around his waist, but it was not attached to the tree, as he did not have a line long enough to reach to a branch strong enough to hold him. According to Torres, Boice pulled on the rope when Torres was not expecting a pull. As a result, Torres's chain saw "kicked back," and Torres fell from the tree, landing on his back. Torres was rendered paraplegic as a result of his fall.

On April 12, 1989, Torres filed suit against the Reardons and against the manufacturer and seller of the chain saw that he was using when he fell from the tree. On December 7, 1990, the trial court granted the Reardons' motion for summary judgment. Judgment was entered thereon, and this appeal followed.

## CONTENTIONS ON APPEAL

Torres contends that: (1) a triable issue of fact existed as to whether he was an employee of the Reardons at the time of the accident that caused his injuries; (2) if Torres was engaged by the Reardons as an independent contractor, rather than an employee, the Reardons are liable for his injuries under the doctrine of "peculiar risk"; (3) a triable issue of fact existed as to whether the Reardons were negligent in the hiring and supervision of Torres,

and whether such negligence was the cause of his injuries; (4) a triable issue of fact existed as to whether Torres reasonably assumed the risks involved in trimming a 70-foot tree.

DISCUSSION

### 1. Standard of Review

■ Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Johnson* v. *Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1071 [260 Cal.Rptr. 67].) The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. (*Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 659 [224 Cal.Rptr. 186].)

■ Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. (*Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 80 [265 Cal.Rptr. 737]; *Taylor* v. *Fields, supra,* 178 Cal.App.3d at p. 660.) In so doing, we apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. (*Zuckerman* v. *Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400-1401 [232 Cal.Rptr. 458].)

With the foregoing principles in mind, we review Torres's claims.

### 2. Torres Was Not an Employee of the Reardons, But Was Engaged as an Independent Contractor.

If Torres was an employee of the Reardons when he was injured, then the Reardons would be liable under the workers' compensation laws for Torres's injuries. (Lab. Code, § 3600; *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256 Cal.Rptr. 543, 769 P.2d 399].) Since it was undisputed that the Reardons did not maintain workers' compensation insurance covering injuries to Torres, Torres would not be

limited to the ordinary workers' compensation remedy but would be entitled to bring an action at law. (Lab. Code, § 3706; *Chakmakjian* v. *Lowe* (1949) 33 Cal.2d 308, 310 [201 P.2d 801]; *Rymer* v. *Hagler* (1989) 211 Cal.App.3d 1171, 1177 [260 Cal.Rptr. 76].) In such action, Torres's injuries would be presumed to be the result of negligence on the part of the Reardons, and the Reardons would be precluded from raising as a defense to liability either contributory negligence or assumption of the risk by Torres, or the negligence of a fellow employee. (Lab. Code, § 3708; *Chakmakjian* v. *Lowe, supra*, 33 Cal.2d at p. 311.)

As defined in the workers' compensation act, an "employee" is "every person in the service of an employer under any . . . contract of hire . . . ." (Lab. Code, § 3351.) However, an independent contractor, defined as one "who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished," is not an employee. (Lab. Code, § 3353; *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra*, 48 Cal.3d at p. 354.)

The principal test of an employment relationship thus is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. (Lab. Code, §§ 2750.5, subd. (a), and 3353; *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra*, 48 Cal.3d at p. 350; *Johnson* v. *Berkofsky-Barret Productions, Inc., supra*, 211 Cal.App.3d at p. 1072.) In addition, several secondary criteria are used to determine the nature of a service relationship. Such secondary criteria include, among others: (1) whether or not the worker is engaged in a distinct occupation or an independently established business; (2) whether the worker or the principal supplies the tools or instrumentalities used in the work, other than tools and instrumentalities customarily supplied by employees; (3) the method of payment, whether by time or by the job; (4) whether the work is part of the regular business of the principal; (5) whether the worker has a substantial investment in the business other than personal services; (6) whether the worker hires employees to assist him. (Lab. Code, § 2750.5; *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra*, 48 Cal.3d at pp. 350-351, 355.)

■ Here, uncontradicted evidence, largely furnished by Torres's own testimony in his deposition, established that under the foregoing criteria, Torres was engaged as an independent contractor in all services that he performed for the Reardons. First, it was established by undisputed testimony that the Reardons engaged Torres to produce the *result* of trimming their tree to a certain size. The means by which the result was to be produced

were not discussed and were not part of the agreement. In addition, uncontradicted evidence established that: (1) Torres performed services for the Reardons, including both general gardening services and the special project of trimming the Reardons' tree, in the course of his independently established business, Jose Torres Gardening Service, a business in which he customarily engaged; (2) it appears that Torres supplied the equipment he used in the job; (3) Torres was not hired by the day or hour, but contracted with the Reardons to produce the specified result of trimming the tree for the specified price of $350, a price quoted by Torres and accepted by the Reardons; (4) the work that Torres contracted to perform was not work ordinarily done in the course of the Reardons' business, but was maintenance work done on their home; (5) Torres had a substantial investment in his gardening business, including a truck and equipment; (6) Torres had employees who assisted him both in his general gardening business and in the tree-trimming project.

The question of whether one engaged to perform services for another is an employee or an independent contractor is ordinarily a question of fact. However, if only one inference may be drawn from all the facts, the question is one of law. (*Johnson* v. *Berkofsky-Barret Productions, Inc., supra,* 211 Cal.App.3d at p. 1073.) From the foregoing facts, only one inference is possible. The evidence establishes as a matter of law that Torres was not an employee of the Reardons, but was an independent contractor at the time he was injured.

### 3. *The Peculiar Risk Doctrine Does Not Apply to Impose Liability Upon a Principal for Injuries Sustained by an Independent Contractor as a Result of the Contractor's Own Negligence.*

Even though Torres was engaged as an independent contractor to trim the Reardons' tree, the Reardons might yet be liable under the "peculiar risk" doctrine for any injuries to "others" resulting from negligence by Torres. (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585-587 [153 Cal.Rptr. 213, 591 P.2d 503].) Torres contends that such liability should include liability for injuries sustained by Torres himself. For reasons which follow, we cannot agree.

The "peculiar risk" doctrine is a well-established exception to the general rule that one who employs an independent contractor is not liable for injuries resulting from the contractor's negligence. (*Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 508 [156 Cal.Rptr. 41, 595 P.2d 619]; *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d at p. 585; *Jimenez* v. *Pacific Western Construction Co.* (1986) 185 Cal.App.3d 102, 109 [229 Cal.Rptr.

575].) California has adopted the doctrine as set forth in sections 413 and 416 of the Restatement Second of Torts, which together provide that one who employs an independent contractor to do work which the principal should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused by failure of the contractor to exercise reasonable care to take such precautions, regardless of whether the employer has provided for such precautions in the contract or otherwise. (*Aceves* v. *Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at pp. 508-509; *Griesel* v. *Dart Industries, Inc.*, *supra*, 23 Cal.3d at p. 585; *Hughes* v. *Atlantic Pacific Construction Co.* (1987) 194 Cal.App.3d 987, 997 [240 Cal.Rptr. 200].)[1]

A "peculiar" risk is a risk peculiar to the work to be done. It may arise out of the character of the work (*Griesel* v. *Dart Industries, Inc.*, *supra*, 23 Cal.3d at p. 587 [work requiring entry into a nine-foot deep trench to pour concrete and lay pipe]), or may be attendant upon the place where the work is to be done (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508] [eradicating traffic lane markings on a busy street, while one of the three lanes was kept open to traffic]). We assume without deciding that the work of trimming a 65- to 70-foot-tall tree presents a peculiar risk.

Of particular significance in this case, the peculiar risk doctrine imposes liability on a principal for harm to "others," caused by the negligence of an independent contractor. (*Van Arsdale* v. *Hollinger, supra*, 68 Cal.2d at p. 254; Rest.2d Torts, § 413, 416.) "Others" includes employees of the independent contractor (*ibid.*; see also, *Anderson* v. *Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 240 [125 Cal.Rptr. 640]), but we are aware of no authority for the proposition that the term includes the independent contractor himself. Nor do any reasonable public policy considerations justify application of the peculiar risk doctrine to impose liability without fault upon the employer of an independent contractor for injuries sustained by the contractor himself.

---

[1]Section 413 provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a)  fails to provide in the contract that the contractor shall take such precautions, or

"(b)  fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Section 416 provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Among the primary policy considerations that underlie the peculiar risk doctrine are the following: as between the principal who employs an independent contractor and a third party injured by the contractor's negligence, the principal is the one who primarily benefits from the contractor's work, the principal selects the contractor and is in a position to select a competent and financially responsible one, the principal is in a position to demand indemnity from the contractor, the principal may obtain insurance to distribute the risk, and the performance of the duty of care is of great public importance. (*Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d at p. 508; *Hughes* v. *Atlantic Pacific Construction Co., supra,* 194 Cal.App.3d at p. 997.)

As between the contractor's principal and the contractor himself, these considerations simply do not apply. As between the principal and the contractor, it is the contractor who has primary power and immediate control over work safety. Further, the contractor better understands the nature of the work and is better able to recognize risks peculiar to it. The contractor is also able to insure against the risk and cost of injury as an expense of his own business. As an independent contractor, who bargains for a contract to complete a project, he is in a position to negotiate the price of his services, taking into consideration the expense of insurance. (Cf. *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at p. 354.)

A second and correlative consideration opposes application of the peculiar risk doctrine to hold a principal liable for injuries sustained by an independent contractor. Such application would have the effect of extending to independent contractors coverage for their work-related injuries that is essentially identical to the coverage afforded employees under the workers' compensation laws, and from which independent contractors are expressly excluded. (Lab. Code, § 3353; *S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at p. 354.) Indeed, if the principal of an independent contractor were subject to liability without fault under the peculiar risk doctrine for the contractor's work-related injuries, the contractor would have *greater* coverage than the employee, for the contractor could bring an action at law, while the employee is limited to worker's compensation for a remedy. (Lab. Code, § 3602.)

The exclusion of independent contractors from workers' compensation coverage is purposeful. The purpose is to impose the risk of work injuries upon the provider of a compensated service in all cases where it is the provider, and not the recipient, who: (1) has the primary power over work safety; (2) is best situated to distribute the risk and cost of injury as an expense of doing business; and (3) has independently chosen the benefits

and burdens and benefits of self-employment. (*S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra,* 48 Cal.3d at p. 354.)

In sum, the policies underlying the peculiar risk doctrine would not be furthered by applying it to impose liability upon a principal for an independent contractor's work-related injuries, and the policies underlying workers' compensation would be thwarted by such application of the doctrine. The peculiar risk doctrine does not provide a basis for holding the Reardons liable for Torres's injuries.

### 4. *There Was No Evidence of Negligence by the Reardons.*

■ Torres argues that the Reardons negligently caused his injuries in two ways. First, Torres contends the Reardons breached a duty of care to him by employing him in the dangerous work of tree-trimming without assuring themselves that he was competent to undertake the task. The contention is without merit. Torres represented to the Reardons that he was experienced in tree trimming and that he was capable of the undertaking. There is no evidence that the Reardons acted unreasonably in relying on Torres's representations. The Reardons were under no duty to inquire whether Torres had a license to perform tree-trimming services, for no license was required if the person offering or performing such services was a nurseryman or gardener. (Bus. & Prof. Code, former § 7026.4.)

■ Torres argues in addition that his injuries were caused by the negligence of the Reardons' neighbor, David Boice, and that triable issues of fact existed as to whether Boice acted as the Reardons' agent in doing the things that caused Torres's injuries. This contention fails as well, there being no evidence whatever that Boice acted as the Reardons' agent or at their request. To the contrary, it was uncontested that Boice involved himself in the tree-trimming project strictly for reasons of his own, namely, because he was concerned that one of the branches to be cut from the Reardons' tree might fall onto his roof if care were not taken to direct its fall.

Normally, the question of agency is one of fact for a jury, but that is not always the case. (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 213 [285 Cal.Rptr. 99, 814 P.2d 1341]; *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676]; *Toyota Motor Sales U.S.A., Inc.* v. *Superior Court* (1990) 220 Cal.App.3d 864, 872 [269 Cal.Rptr. 647].) Here, there is nothing in the evidence concerning the nature of David Boice's involvement in the trimming of the Reardons' tree from which it may legitimately be inferred that he acted as the agent or employee of the Reardons. The fact that Boice performed electrical and other contracting services for the Reardons on other occasions raises no inference that he

was performing a service for them when he involved himself, for his own purposes, in Torres's work of trimming the tree.

Absent any showing of negligence by the Reardons in connection with Torres's injury, and absent any basis for imposing liability upon them in the absence of a showing of negligence, summary judgment was properly granted.[2]

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.

---

[2]Because we have concluded, first, that the evidence contained no basis for imposing liability for Torres's injuries upon the Reardons in the absence of a showing of negligence, and secondly, that there was no material issue of fact as to whether the Reardons were negligent, we need not reach the issue of whether the evidence presented a material issue of reasonable implied assumption of the risk.