[No. B064403. Second Dist., Div. Six. Sept. 8, 1992.]

VIRGINIA TRYER et al., Plaintiffs and Appellants, v.
OJAI VALLEY SCHOOL, Defendant and Respondent.

## COUNSEL

Orrock, Higson & Kurta, Daniel A. Higson and Robert R. Anderson for Plaintiffs and Appellants.

Ellis, Beach, Procter & McCarthy and Andy H. Viets for Defendant and Respondent.

## OPINION

**GILBERT, J.**—We affirm the summary judgment granted respondent Ojai Valley School (OVS) because its employee, Lorraine West (West), was on a personal break between work shifts when her pickup truck collided with the automobile of appellants' decedent, George Tryer. (*Peccolo* v. *City of Los Angeles* (1937) 8 Cal.2d 532, 539 [66 P.2d 651]; *Arboleda* v. *Workmen's Comp. App. Bd.* (1967) 253 Cal.App.2d 481, 483, 485-486 [61 Cal.Rptr. 505].)

### FACTS

The material facts are undisputed. OVS employed West part time to feed its horses twice a day at its two campuses during two work shifts. OVS paid West by the hour for each shift from the time she arrived on one campus until she left the other campus. OVS did not pay West for travel time to or from work or for travel expenses.

The day of the accident West worked at both campuses during her morning shift between 6 a.m. and about 9 a.m. After her morning shift, she

left one campus to ride her own horse and to eat her lunch at a ranch. At approximately 1:15 p.m., West left the ranch and headed towards the school's lower campus to begin her afternoon shift. Around 1:30 p.m., however, her truck struck the automobile of appellants' decedent, George Tryer.

Virginia Tryer, on behalf of herself and her two minor children, sued the Wests and General Motors Corporation. Several months later, Tryer filed an amended complaint alleging that OVS is vicariously responsible for the wrongful death of George Tryer. The trial court dismissed General Motors, the Wests settled with Tryer, and OVS answered the amended complaint.

OVS filed a motion for summary judgment contending that West was not engaged in the course and scope of her work when the accident occurred. Tryer filed a motion for summary adjudication on the same issue.

The trial court granted OVS's motion, denied Tryer's motion and entered judgment in favor of OVS.

## DISCUSSION

■ "Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment. This doctrine is based on ' "a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." ' " (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676], quoting *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988]; *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208-209 [285 Cal.Rptr. 99, 814 P.2d 1341]; Civ. Code, § 2338.)

■ "Generally, the issue of scope of employment is a question of fact. [Citation.] However, the issue becomes a question of law when the facts are undisputed and no conflicting inferences are possible." (*Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 968.) Because there are no material factual disputes here, we independently consider whether OVS is entitled to summary judgment as a matter of law. (*Visueta* v. *General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613, 1616 [286 Cal.Rptr. 402]; *Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52]; Code Civ. Proc., § 437c, subd. (c).)

■ To hold an employer vicariously liable the employee must be " 'engaged in the duties which he was employed to perform' [or] 'those acts which incidentally or indirectly contribute to the [employer's] service.' " (*Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 916 [75 Cal.Rptr. 544], quoting *Kish* v. *California State Auto. Assn.* (1922) 190 Cal. 246, 249 [212 P. 27], and *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].) "Conversely, the employer is not liable when the employee is pursuing 'his own ends.' " (*Harris, supra,* at p. 916.)

■ Generally, an employer is not responsible for torts committed by an employee who is going to or coming from work. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 961; *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721-722 [159 Cal.Rptr. 835, 602 P.2d 755].) The reason for this "going and coming" rule is that "the employment relationship is 'suspended' from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer [citation]." (*Hinman, supra,* at p. 961; *Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d at pp. 912-913.)

The rule "has particular application to vehicle accidents of employees whose jobs do not embrace driving." (*Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d at p. 917, fn. omitted.) Accordingly, courts apply the rule when the employee performs the employment services " 'at or in a particular plant or upon particular premises. . . .' " (*Id.,* at p. 916.) There are exceptions to the rule, however. (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 961.)

■ Tryer opines that she may invoke the "required-vehicle" exception to the rule because OVS required West to use her own vehicle to get to work. Not so. The cases invoking the required-vehicle exception all involve employees whose jobs entail the regular use of a vehicle to accomplish the job in contrast to employees who use a vehicle to commute to a definite place of business. (See and compare *Richards* v. *Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236, 242 [120 P.2d 650]—concerned an outside insurance sales agent required to use vehicle daily to meet prospects and customers in a territory allocated to him by the company; *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 816, 825 [73 Cal.Rptr. 253, 447 P.2d 365]—employer held liable for car accident involving social worker whose job required regular use of vehicle during work hours to visit clients in the field; *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176]—employer held liable for accident involving one of its farm laborers who traveled amongst seven noncontiguous fields as involving

"extraordinary transits that vary from the norm"—case distinguished its facts from ordinary commutes; *Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 810 [99 Cal.Rptr. 666]—traveling repairman's job entailed extensive use of a truck in field to call on customers.)

Tryer asserts that the distinction between such cases and the instant one "is obscure, and at best is a faulty quantitative analysis" concerning the number of miles driven. We disagree. The foregoing cases are distinguishable from the instant one because they all require the use of a vehicle as an integral part of performing the job at disparate locations throughout the course of work hours. Here, West merely commuted between two designated school campuses. OVS never required West to use her vehicle for company errands during work hours.

It does not matter that the trial court declined to rely on workers' compensation cases because the facts of this case are not subject to the "required-vehicle exception" under either workers' compensation or tort cases. We note, however, that "[i]n the 'going and coming' cases, the California courts often cite tort and workers' compensation cases interchangeably." (*Ducey v. Argo Sales Co., supra*, 25 Cal.3d at p. 722.) ■ We review the judgment of the trial court, not its reasoning. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.) Furthermore, we independently review appeals of summary judgments. (*Visueta v. General Motors Corp., supra*, 234 Cal.App.3d at p. 1613; *Torres v. Reardon, supra*, 3 Cal.App.4th at p. 836.)

■ As the trial court held, this case devolves upon application of the "lunch break" rule. The California Supreme Court has explained that " '[i]t is well settled . . . that an employee, while taking time away from his work for meals, is not in the service of his employer and that the latter therefore is not responsible for negligence of the employee during such periods of absence from work. [Citations.] . . .' " (*Peccolo v. City of Los Angeles, supra*, 8 Cal.2d at p. 539; see also *Martinelli v. Stabnau* (1935) 11 Cal.App.2d 38, 40-41 [52 P.2d 956]—worker driving home for lunch and "not at the time of the accident actually performing any service for his employer"; *Helm v. Bagley* (1931) 113 Cal.App. 602, 605 [298 P. 826]—collision occurred after worker bought groceries on way home for dinner—held "[h]e was in his own automobile and on his own business, which in no manner pertained to the business of his employer"; *McFadden v. Workers' Comp. Appeals Bd.* (1988) 203 Cal.App.3d 279, 281-282 [249 Cal.Rptr. 778]; *Mission Ins. Co. v. Workers' Comp. Appeals Bd.* (1978) 84 Cal.App.3d 50, 54-57 [148 Cal.Rptr. 292].)

■ The Tryers opine that West was not on a lunch break when the accident occurred. They are incorrect. West left her first shift at nine in the morning the day of the accident. During her hiatus from work she rode her own horse and ate lunch off campus. She was on her own time and had not returned for her scheduled shift at the time of the accident.

We hold that the instant facts are most similar to those in *Arboleda* v. *Workmen's Comp. App. Bd., supra*, 253 Cal.App.2d at pages 483, 485-486. The decedent in *Arboleda* worked as a room-service waiter at a hotel. The day of the accident, he worked from 7 a.m. until 3 p.m. The hotel schedule required him to return to work at 6 p.m. that day for a second shift. Decedent drove home for his break about 3:20 p.m. During his return trip to the hotel, he died in an accident.

As in the instant case, decedent drove his own car, paid his own travel expenses and earned pay only for time he worked on the hotel premises. As the *Arboleda* court pointed out, the Legislature, even in the workers' compensation arena, places the risk of such occurrences on the employee. (*Arboleda* v. *Workmen's Comp. App. Bd., supra*, 253 Cal.App.2d at p. 483.) As in *Arboleda*, the circumstances here fall "squarely within the going and coming rule." (*Id.*, at p. 485.) Regardless of the irregular schedule in *Arboleda*, the court held that at the time of the accident "he was doing no more than preparing to make his services available in accordance with the schedule." (*Id.*, at p. 486.)

■ Lastly, the Tryers contend that OVS is subject to the exception for "dual" or "combined purposes" here. Our Supreme Court has defined this exception as follows: "[W]here the [employee] is combining his own business with that of his [employer], or attending to both at substantially the same time, no nice inquiry will be made as to which business the [employee] was actually engaged in when a third person was injured; but the [employer] will be held responsible, unless it clearly appears that the [employee] could not have been directly or indirectly serving his [employer]. [Citations.]" (*Ryan* v. *Farrell* (1929) 208 Cal. 200, 204 [280 P. 945]; see also *Perez* v. *Van Groningen & Sons, Inc., supra*, 41 Cal.3d at p. 970; *Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 210 [30 Cal.Rptr. 253] and citations therein.)

It is undisputed that West was not engaged in any errand for the school at the time of the accident. Because the accident occurred while West pursued her own interests on an unpaid break away from her designated place of work, we affirm the summary judgment granted OVS.

Judgment and costs to OVS.

Stone (S. J.), P. J., and Yegan, J., concurred.

A petition for a rehearing was denied September 30, 1992.