[No. B214234. Second Dist., Div. Three. Feb. 25, 2010.]

JOSE LUIS LARA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, BRATIFF HOME
CORPORATION et al., Respondents.

COUNSEL

Leo H. Hernandez for Petitioner.

Scott Broffman, in pro. per., and for Respondent Bratiff Home Corporation.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

ALDRICH, J.—

## INTRODUCTION

At issue in this proceeding is whether a gardener, hired twice in the space of 12 months to prune bushes for a diner, was an employee of the diner at the

time he sustained injury or an independent contractor exempt from workers' compensation coverage. Jose Luis Lara (Lara) petitions for writ of review of the decision of the Workers' Compensation Appeals Board (the Board) against him and in favor of defendant Bratiff Home Corporation, doing business as Metro Diner (Metro Diner), and Scott Broffman as chief executive officer. Viewing the undisputed evidence in light of the relevant factors of employment relationship set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*), we conclude that the record supports the Board's finding as a matter of law that Lara was an independent contractor and not an employee. Accordingly, we affirm the decision of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

Lara, a 62-year-old man, suffered injury to his head, lower back, neck, right shoulder, arm, hand, and thumb when he fell from a roof on March 11, 2000, while pruning bushes for the diner. Lara filed a workers' compensation claim against Metro Diner's then sole shareholder, Scott Broffman, personally, and against Metro Diner. The diner leases space inside a hotel. Lara fell from the hotel's roof. The Uninsured Employers Benefits Trust Fund was joined as a party defendant as Metro Diner had no workers' compensation insurance.[1]

At trial on the issue of injury and employment, Metro Diner called no witnesses. Lara testified that he has been gardening, painting, pipe fixing, and doing graffiti removal for 25 years. His clients are people who either know him or who find him on the street corner. He charges by the hour, but sometimes he contracts for the entire day. He usually does the same type of work but for different people each day. Lara does not have a roofer's license or a general contractor's license. He has no city license to perform this type of work. He has no employees and does not work out of an office or advertise.

Metro Diner's manager's wife Patricia arranged for Lara to do gardening work at Metro Diner on two occasions. The first time, Patricia, who was Lara's dentist's secretary, had asked Lara what kind of work he did. When he told her he gardened, she stated that her husband owned a diner. She gave

---

[1] An uninsured employer is an employer that has failed to secure the payment of compensation as required by Labor Code section 3700. (Cal. Code Regs., tit. 8, § 15560.) Every employer except the state shall insure the payment of compensation by being insured or securing a certificate of consent to self-insure. (§ 3700.)

All further statutory references are to the Labor Code, unless otherwise noted.

him an address and told him to go early in the morning so his work would not make the restaurant's tables dusty. Upon his arrival, Lara was asked to trim the bushes along the roofline. The second time he went to Metro Diner, March 11, 2000, was about a year later. That was the day that he fell from the roof.

Lara was paid in cash by the hour for his services at Metro Diner the first time, but was not paid the second time because he did not complete the work after his fall and he never sent a bill. Metro Diner did not take taxes out of his pay; Lara pays his own taxes. Lara and Patricia did not discuss the number of hours he would work. Nor did they discuss the price until he was finished with the work. The first time, Patricia paid him $15. They did not discuss when he would provide services in the future, only that she would contact him when services were needed.

On the second occasion about a year later, Patricia asked Lara to do the same job, i.e., trim the bushes along Metro Diner's roofline. They did not discuss terms of employment, such as the number of hours, or the price he would be paid for the job. Lara had no plans to do any additional work after the second occasion, only that he would trim the bushes for Metro Diner when Patricia asked him to.

Lara brought all the equipment he needed to do the job, including a trimmer, a rake, a broom, and a blower, which tools he owns. He also brought a ladder that he borrowed from a friend. He arrived in his own truck. On the second occasion, he did not bring a ladder and the concierge told him he could go through the hotel to get to the roof. No one told him how to do his job on March 11, 2000, "because he already knew how to do his job." Patricia did not tell him to bring an assistant or how long the job would take. She did not tell him to arrive on Saturday at 7:00 a.m., just to go early because the diner opened between 7:30 and 8:00 a.m.

On this evidence, the workers' compensation judge (WCJ) found that Lara was employed by Metro Diner as a gardener and was injured in the course of employment. The WCJ also found that Metro Diner did not rebut the presumption that Lara was its employee on the date of the injury, and hence, Lara was entitled to workers' compensation benefits.

Metro Diner filed a petition for reconsideration of the findings and order with the Board contending the evidence did not support a finding that Lara was its employee on the date of injury. The Board granted reconsideration and, relying on the test in *Borello*, the majority found, although he was

injured while attempting to prune bushes for the benefit of and at the behest of the diner, that Lara was an independent contractor and thus not entitled to workers' compensation benefits. The Board noted that Lara did not testify during trial that he was an employee of Metro Diner. Rather, he testified he handled his own taxes and contracted with numerous individuals to perform specific jobs. Also, the Board noted Lara's statement under penalty of perjury in his interrogatory response in his civil action against the hotel, filed after his injury, that " 'I am self-employed as a gardener.' " However, the Board recognized that the distinguishing characteristic of an employer is the power to control the details of the work and methods of performance. On that point, the Board found "no evidence that Metro had the power to control the details of [Lara's] work in pruning the bushes or the method by which he performed that task." Lara appealed.

## CONTENTIONS

Lara contends that the Board misapplied the factors in *Borello, supra*, 48 Cal.3d 341.

## DISCUSSION

1. *Based on the factors of employment set forth in* Borello, *Lara was an independent contractor at the time of his injury.*

■ "The Workers' Compensation Act (Act) extends only to injuries suffered by an 'employee,' which arise out of and in the course of his 'employment.' [Citations.]" (*Borello, supra*, 48 Cal.3d at p. 349.) " 'Employee[s]' include most persons 'in the service of an employer under any . . . contract of hire' (§ 3351), but do not include independent contractors." (*Borello, supra*, at p. 349.) It has long been the law in California that an " '[i]ndependent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (§ 3353; see *Borello, supra*, at p. 366 (dis. opn. of Kaufman, J.).)

The question before us is whether Lara was an employee or an independent contractor when he was injured. "The determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences, and the [Board's] decision must be upheld if substantially supported. [Citation.] If the evidence is undisputed, the question becomes one of law [citation], but deference to the agency's view is appropriate." (*Borello, supra*, 48 Cal.3d at p. 349.) We liberally construe the

workers' compensation act to extend benefits to persons injured in their employment. (§ 3202.)

■   " '[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.]" (*Borello, supra,* 48 Cal.3d at p. 350; see also § 3353.) "The existence of such right of control, and not the extent of its exercise, gives rise to the employer-employee relationship. [Citations.]" (*Borello, supra,* at pp. 366–367 (dis. opn. of Kaufman, J.), citing *S. A. Gerrard Co. v. Industrial Acc. Com.* (1941) 17 Cal.2d 411, 413–414 [110 P.2d 377].) Numerous secondary factors, derived largely from the Restatement Second of Agency (*Borello, supra,* at p. 351), include, inter alia, "(1) whether or not the worker is engaged in a distinct occupation or an independently established business; (2) whether the worker or the principal supplies the tools or instrumentalities used in the work, other than tools and instrumentalities customarily supplied by employees; (3) the method of payment, whether by time or by the job; (4) whether the work is part of the regular business of the principal; (5) whether the worker has a substantial investment in the business other than personal services; (6) whether the worker hires employees to assist him. [Citations.]" (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 837 [5 Cal.Rptr.2d 52] (*Torres*), citing §§ 2750.5, subd. (a), 3353; and *Borello, supra,* at pp. 350–351, 355.) *Borello* listed some additional factors, culled partly from other jurisdictions, among which are (a) whether the parties believe they are creating the relationship of employer-employee; and (b) the degree of permanence of the working relationship. (*Borello, supra,* at p. 355.)

■   Applying these *Borello* factors to the uncontradicted evidence, we conclude the Board accurately found that Lara was an independent contractor as a matter of law, not an employee, when he performed pruning services. Metro Diner did not possess the right of control and the factors do not otherwise weigh in favor of employee status.

Commencing with the right-of-control criterion, Lara was engaged to produce *the result* of trimming the bushes. Neither party here presented evidence that Metro Diner had the power to control the manner or means of accomplishing the pruning. Just as in *Torres*, where we held that the plaintiff, hired by homeowners to prune a tree, was an independent contractor, the means and manner to accomplish the result of pruning here were neither discussed nor were part of the agreement. (*Torres, supra,* 3 Cal.App.4th at pp. 837–838, 841.)

Indeed, it is this lack of power by Metro Diner to control the means and manner by which Lara provided the pruning service that puts the facts of this case in stark contrast to the facts in *Borello*. There, the Supreme Court held that unskilled migrant cucumber harvesters were employees largely because the owner "exercise[d] 'pervasive control over the operation as a whole . . .' [citation]," as " '[a]ll meaningful aspects of this business relationship: price, crop cultivation, fertilization and insect prevention, payment, [and] right to deal with buyers . . . are controlled by [Borello].' [Citation.]" (*Borello, supra*, 48 Cal.3d at p. 356, fn. omitted.) The migrant harvesters controlled only the decisions of when to irrigate and harvest, the manner of training the vines, and weeding. The migrants' work was an integral component of the grower's operations, over which the grower exercised pervasive control, and the supposed "independence" of the harvesters from the grower's supervision was not a result of superior skills but was a function of the unskilled nature of the labor, which required little supervision. Here, however, Lara testified that no one told him how to do the pruning and that no one tells him how to do his work. Once he accepted a job, he testified, he did it without direction from the person for whom the service was rendered. Thus, the lack of supervision here was not a function of the unskilled nature of the job. Nor does the fact that Patricia asked Lara to arrive early suggest that Metro Diner controlled any aspect of the pruning. It was Lara who chose both the date and time to perform the service. In short, the principal test of the employment relationship and the very definition of an independent contractor, namely, whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired (§ 3353), supports the Board's finding that Lara was an independent contractor.

Our conclusion that Lara was an independent contractor at the time of his injury is further supported by the following *Borello* criteria. First, Lara performed this work as part of his own occupation as a gardener, which he had been doing independently for approximately 25 years. Not only did Lara have many clients, but Patricia did not ask him to perform any service other than pruning the bushes. Second, Lara supplied the equipment he used for the job. Such tools were not ones that a restaurant would have. Third, Lara had a substantial investment in his business, such as his equipment. Although Lara does not advertise, he has several different clients who either pick him up from the street corner or who telephone him to perform specific jobs. Fourth, he was not hired by the day or hour, or even on a regular basis. Payment was only discussed after the work was complete. Sometimes Lara charged by the hour and sometimes by the job and so Lara was paid on a job-by-job basis, with no obligation on the part of either Metro Diner or Lara for work in the future. Taxes were not taken out of the money he was paid. Lara estimates

and pays his own taxes. Fifth, no date for Lara's return was specified after the first time he pruned bushes for Metro Diner. Lara understood only that he would be contacted when his services were needed, with the result that he worked for a circumscribed period of time with no permanence whatsoever in his working relationship with Metro Diner. Thus, Lara's profit or loss depended on his scheduling, the time taken to perform the services, and his investment in tools and equipment.

The sixth *Borello* factor also distinguishes this case from the facts of *Borello*. In *Borello*, harvesting formed "a regular and integrated portion of Borello's business operation" (*Borello, supra*, 48 Cal.3d at p. 357) where Borello's entire "business is the production and sale of agricultural crops . . ." (*id.* at p. 356). Thus, the Supreme Court concluded, the harvesters were employees. But here, bush pruning is not related in any way to the regular business of Metro Diner, but was occasional, discrete maintenance done for the restaurant. Hence, Lara was asked to provide his service when the restaurant was not open so that his work would not interfere with Metro Diner's *regular business*. Seventh, neither Lara nor anyone from Metro Diner testified that the parties believed they were creating an employer-employee relationship. Rather, the Board cited Lara's interrogatory response that " 'I am self-employed as a gardener.' " The foregoing factors all support the Board's conclusion that Lara was an independent contractor because he "render[ed] service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (§ 3353; see § 2750.5.)

These criteria are not to be applied mechanically as separate tests, but " 'are intertwined and their weight depends often on particular combinations.' [Citation.]" (*Borello, supra*, 48 Cal.3d at p. 351.) "[T]he process of distinguishing employees from independent contractors is fact specific and qualitative rather than quantitative." (*State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 202 [38 Cal.Rptr.2d 98].) Certainly, Lara did not unreasonably rely on Patricia's ostensible authority to retain him. Lara is unlicensed, did not advertise, often charged by the hour, and never billed Metro Diner for his work because of his injury. But these factors do not shift the balance in favor of employee status in light of the overwhelming evidence demonstrating Lara was an independent contractor.

In his dissent, Commissioner Brass argued that the Board's majority improperly applied the presumption of employment under section 3357 that "[a]ny person rendering service for another, other than as an independent contractor . . . is presumed to be an employee." (*Ibid.*) Commissioner Brass

observed, and the dissent agrees, that Metro Diner failed to carry its burden to rebut the presumption that Lara was an employee when injured because the diner presented no evidence. However, the necessary evidence was adduced in the form of Lara's own testimony. Lara's testimony carried this burden. Stated otherwise, the facts are undisputed. "[I]f only one inference may be drawn from all the facts, the question is one of law. [Citation.]" (*Torres, supra*, 3 Cal.App.4th at p. 838; see *Borello, supra*, 48 Cal.3d at p. 349.) From the foregoing facts, the undisputed evidence establishes, as a matter of law, that Lara was not an employee of Metro Diner, but was an independent contractor when he was injured.

Nor did the Board misapply *Borello, supra*, 48 Cal.3d 341, as Commissioner Brass claimed. The Board properly weighed the *Borello* criteria. Yet, the grower's relationship with its employee harvesters in *Borello* was markedly different than the relationship at issue here. As analyzed above, not only did the grower there retain "all *necessary* control over the harvest portion of its operations," the most important of the factors, but the harvesters formed a regular and integrated part of Borello's business operation. (*Id.* at pp. 355, 357.) By contrast, Lara is a gardener whose work is wholly unrelated to the business of food service. Although seasonal, the work in *Borello* was permanent in the agricultural process, and many families returned to Borello every harvest. (*Id.* at p. 357.) Hence, the *Borello* court found that this "permanent integration of the workers into the heart of Borello's business is a strong indicator that Borello functions as an employer . . . ." (*Ibid.*) Lara, however, had no permanent association with Metro Diner, having done pruning for them only twice in the space of more than a year, and no date for him to return to Metro Diner was specified. Indeed, the evidence indicates that no one at Metro Diner arranged for Lara to prune the bushes. It was the wife of the diner's manager who spoke to Lara. While the migrant harvesters engaged in no trade or calling distinct from harvesting and did not hold themselves out in business (*ibid.*), Lara has been holding himself out for 25 years to his many clients, who are unrelated to Metro Diner, as well as to others who telephoned him or picked him up on the corner. *Borello* is distinguishable in many of the more salient criteria of an employment relationship. The Board correctly weighed and applied the *Borello* criteria to this case and concluded that Lara was not an employee, but an independent contractor.

Rather, the facts here are more similar to *Torres, supra*, 3 Cal.App.4th 831, where we held as a matter of law that a gardener, hired to trim a tree in the front yard of the Reardons' house, was an independent contractor, not an employee of the homeowners. (*Id.* at p. 838.) In particular, the undisputed evidence, largely derived from the gardener's own deposition testimony,

established that the Reardons engaged Torres to produce the result of trimming a tree, and that the means by which the result was produced were neither discussed nor part of the agreement. (*Id.* at pp. 837–838.) While the gardener in *Torres* had employees and was doing business under the name of Jose Torres Gardening Service, facts not present here, the gardener in *Torres* had a substantial investment in tools and equipment which he supplied for the job, and the work Torres did was not work ordinarily done in the course of the Reardons' business, but was maintenance work done on the home, criteria similar to those here. As demonstrated by *Torres*, the facts here convincingly demonstrate that Lara was an independent contractor at the time of his injury.

Finally, although the workers' compensation statutes are to be construed liberally in favor of awarding compensation (§ 3202), no amount of liberal construction can change the balance of evidence here. Nor does our conclusion that Lara was an independent contractor defeat the purposes behind the workers' compensation system. Lara had control over his work and safety and there was no evidence that he could not have spread the cost of insurance against work-related injuries through fees he charged for his services. (*State Compensation Ins. Fund v. Brown, supra,* 32 Cal.App.4th at p. 204.)

### 2. *Metro Diner's petition for reconsideration was verified.*

Lara contends Broffman did not sign a verification on behalf of the Bratiff Home Corporation doing business as Metro Diner. Lara contends further that he was not served with a signed verification of the petition for reconsideration by Broffman, as an individual. Hence, Lara contends, the petition for reconsideration filed by Broffman was invalid and the Board should not have acted on it.

"The petition for reconsideration shall . . . . be verified upon oath in the manner required for verified pleadings in courts of record and shall contain a general statement of any evidence or other matters upon which the applicant relies in support thereof." (§ 5902.) Pursuant to Code of Civil Procedure section 446, "When a corporation is a party, the verification may be made by any officer thereof."

Here, the WCJ's report and recommendation on petition for peconsideration indicated that the petition filed by "Defendants Scott Broffman; Bratiff Home Corporation" was verified. The record of proceedings also has a verification from Scott Broffman as "defendant and individual" and he was acting in propria persona. Bratiff Home Corporation was named as a party defendant. Moreover, an adverse party may file an answer to a petition for

reconsideration 10 days after receipt of the petition, and the record does not show that Lara filed an answer or otherwise raised this issue with the Board. Issues not raised in the trial court cannot be raised for the first time on appeal. (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1309 [56 Cal.Rptr.3d 491].)

## DISPOSITION

The decision of the Board is affirmed.

Croskey, J., concurred.

**KLEIN, P. J.,** Concurring and Dissenting.—I concur in the majority opinion that the petition for reconsideration filed by Bratiff Home Corporation doing business as Metro Diner (Metro), complied with verification of pleadings. I concur with the majority and the Workers' Compensation Appeals Board (Board) that Jose Luis Lara (Lara) was acting at the behest of Metro and for its benefit and rendered service to it when he was injured on March 11, 2000, and, thus, was presumed to be an employee pursuant to Labor Code section 3357.[1] The only remaining issue before this court is whether respondent Scott Broffman (Broffman), individually or as a substantial shareholder of Metro, sustained his burden of proof that Lara was an independent contractor and, therefore, not entitled to workers' compensation benefits. I find the court majority misapplied the factors to consider in the analysis of an employer/employee relationship and that Metro did not meet its burden of proof that Lara was an independent contractor. Because this issue is of continuing public interest, I provide a discussion as to the application of factors to consider in light of the legislative intent and public policy of the workers' compensation laws.

### 1. *Procedural Background and Standard of Review.*

This case proceeded to trial on the issue of injury and employment. The workers' compensation judge (WCJ) found that Lara was injured in a fall while providing a benefit to Metro and, therefore, was presumed to be an employee on the date of the injury. The WCJ also found that Metro failed to overcome the presumption of employment and did not sustain its burden of proving Lara was an independent contractor and, thus, found that he was entitled to workers' compensation benefits. Metro filed a petition for reconsideration of the findings and order.

The Board granted the petition. The Board agreed with the WCJ's findings that Lara was injured while attempting to prune bushes for the benefit of and

---

[1] All further reference to statute is to the Labor Code unless stated otherwise.

at the behest of Metro and, thus, was presumptively an employee pursuant to section 3357. The Board inspected photos of the premises at Metro showing the bushes Lara was attempting to prune, which ran along the roofline of Metro. The Board found that pruning the bushes was a benefit to Metro, since it improved the appearance of the diner's façade. The Board noted that Lara's testimony was uncontradicted and hospital records from the date of injury confirmed an injury as a result of a fall. However, the Board majority, relying on *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*), found Lara was an independent contractor and, thus, was not entitled to workers' compensation benefits.

Commissioner Brass dissented and contended the majority misapplied the factors to consider in the presumption of employment pursuant to section 3357. He also found Metro presented no evidence to rebut the presumption Lara was an employee.

The extent of review in this court is set forth in section 5952, which provides that we must determine, based on the entire record, whether the Board acted without, or in excess of, its powers; whether the order, decision, or award was procured by fraud, was unreasonable, or was not supported by substantial evidence; and, if findings of fact were made, whether such findings support the order, decision, or award under review.

2. *Explanation of terms.*

" 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . . ." (§ 3351.) The alleged employee is presumed to be an employee, and eligible for workers' compensation benefits, if he or she rendered service for the alleged employer. "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." (§ 3357.)

The presumption of employment is rebuttable. (Herlick, Cal. Workers' Compensation Handbook (28th ed. 2009) Presumption of Employment, § 2.7, p. 2-20.) Section 5705, subdivision (a) provides in pertinent part that the burden of proof rests upon the party holding the affirmative defense[2] and rests upon the employer to establish: "That an injured person claiming to be

---

[2] The standard is by a preponderance of evidence: "All parties and lien claimants shall meet the evidentiary burden of proof on all issues by a preponderance of the evidence in order that all parties are considered equal before the law. 'Preponderance of the evidence' means that evidence that, when weighed with that opposed to it, has more convincing force and the greater

an employee was an independent contractor or otherwise excluded from the protection of this division where there is proof that the injured person was at the time of his or her injury actually performing service for the alleged employer." " 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (§ 3353; see § 2750.5.)

### 3. *The Board majority and the majority of this court found Lara was an independent contractor.*

The Board majority and the majority of this court found that the "undisputed evidence," in light of the relevant factors of an employment relationship, supported a finding that Lara was an independent contractor. The majority found that Lara was engaged to produce the result of trimming the bushes but that the means of accomplishing the result were neither discussed nor were part of the agreement. Yet, the majority acknowledged that neither party presented evidence that Metro had the power to control the manner or means of accomplishing the pruning. Lara was the only witness as to the working arrangement between the parties. Metro called no witnesses. It proffered two exhibits: one page from a response to form interrogatories in a civil case Lara had filed against Metro and Travelodge,[3] and the application for adjudication of the claim dated March 20, 2002.[4]

### 4. *Application of factors to consider in the determination of whether a worker is an independent contractor or an employee.*

*Borello, supra,* 48 Cal.3d 341 is the seminal case as to the factors to consider in the determination of whether a person is an independent contractor or an employee. The distinction between employee and independent contractor arose out of common law to limit liability for the misconduct of a person rendering service for another. (*Id.* at p. 350.) The extent of supervisory control was a key in the determination of the status, and the extent to which the employer had the right to control details became the principal measure for employment status for common law purposes. (*Ibid.*)

However, the existence of right of control, not the extent to which it is exercised, is sufficient to find an employer/employee relationship. (*S. A.*

---

probability of truth. When weighing the evidence, the test is not the relative number of witnesses, but the relative convincing force of the evidence." (§ 3202.5.)

[3] *Jose Lara v. Metro Diner et al.* Washington Place LLC, doing business as Travelodge Culver City was the propounding party. Bratiff Corporation doing business as Metro had a lease for the diner from Travelodge from approximately 1997 through 2006.

[4] An application for adjudication of a claim is a required pleading filed with the local appeals board, which establishes jurisdiction for the collection of benefits. (§ 5500.)

*Gerrard Co. v. Industrial Acc. Com.* (1941) 17 Cal.2d 411, 413–414 [110 P.2d 377].) Moreover, with the advent of protective legislation of employees through workers' compensation laws, "the courts have long recognized that the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements." (*Borello, supra,* 48 Cal.3d 341, 354.)

*Borello, supra,* 48 Cal.3d 341 held that farmworkers harvesting crops under an agreement as sharefarmers were employees and not independent contractors. The court reasoned that Borello, whose business was the production and sale of agricultural crops, maintained all necessary control over the production including harvesting the crop, which could be done only one way. (*Id.* at p. 356.) In addition to the common law right-of-control test, *Borello* listed several secondary factors that may be considered to support an employment relationship. (*Id.* at p. 350.) *Borello* also stated that although these factors can be considered, they cannot be applied mechanically, and the factors are intertwined and their weight depends on particular combinations. (*Id.* at p. 351.) These secondary factors considered in *Borello* will be discussed in light of the facts in the instant case.

a. *Whether the services performed were within a distinct occupation or an independently established business.*

The first factor considered was whether the services performed were within a distinct occupation or an independently established business. *Borello* rejected the contention that sharefarmers harvesting cucumbers were in a distinct occupation. The court opined that the work involved simple manual labor, and that harvest and plant care can be learned quickly and there is no particular skill beyond stamina and patience. (*Borello, supra,* 48 Cal.3d at pp. 357–358.)

In the instant case, the Board found that Lara was involved in a distinct occupation as a gardener and that he had been working as such for 25 years. However, trimming bushes would be comparable to, if not easier than, harvesting, planting, and caring for cucumbers. Lara was not a skilled worker, nor one who did specialized work. Lara was a day laborer for hire for general manual labor, and other than gardening, he would paint, remove graffiti, and fix pipes. Lara did not have a business name or a business office, nor did he advertise. He did not have a roofer's license, a general contractor's license or a city license. He had no employees. Thus, like the sharefarmers in *Borello*, Lara was not in a distinct occupation or business but was an unskilled manual laborer for hire.

b. *Whether the work is usually done under the direction of the principal or by a specialist without supervision.*

The second factor to consider is whether the work is usually done under the direction of the principal or by a specialist without supervision. There is a 60-day growing cycle for cucumbers. Borello planted the cucumber crop, cultivated it, used its own irrigation system, and applied pesticides. The field workers arrived about two to three weeks before the harvest began. The workers were responsible for the care of the plants in their assigned plots during the harvest period. The workers could set their own hours and decide when to pick the cucumbers. Yet the court found that "[i]t is the simplicity of the work, not the harvesters' superior expertise, which makes detailed supervision and discipline unnecessary." (*Borello, supra*, 48 Cal.3d at pp. 356–357.)

In the instant case, Lara did testify he had been doing general gardening jobs for 25 years. He testified he was able to perform the simple jobs of trimming, sweeping, and raking without supervision. These tasks did not require superior expertise, and the lack of supervision was a function of the unskilled nature of the job.

c. *Whether the skill required in the particular occupation is such that the worker by the nature of the skill would be independent of control.*

The third factor to consider is whether the skill required in the particular occupation is such that the worker by the nature of the skill would be independent of control. *Borello* found that cucumber harvest involved simple manual labor. It observed plant care and harvest methods can be learned quickly, and there is no particular skill necessary beyond stamina. In the instant case, the Board found that to those without experience, the skill required in pruning shrubbery, using pruning tools and using a blower would be difficult to perform without some direction.

However, the evidence shows Lara merely trimmed the bushes. There was no evidence Lara was required to prune a tree or shape the bushes in an artistic or special shape. Using the blower is essentially sweeping with a machine. As with the sharefarmers in *Borello*, the work done by Lara at Metro was simple manual labor wherein detailed supervision was not necessary.

d. *Whether the principal or the worker supplies the tools.*

The fourth factor to consider is whether the principal or the worker supplies the tools. In *Borello*, the sharefarmers supplied their own tools and

agreed to utilize accepted agricultural practices in order to provide for the maximum harvest. (*Borello, supra*, 48 Cal.3d at p. 346.) In the instant case, the majority states Lara had a "substantial investment" in his business, such as his equipment. (Maj. opn., *ante*, at p. 400.) Lara took to the job at Metro trimmers, a broom, a rake, and a blower. Some of these tools were borrowed from a friend. On the first assignment he had at Metro, Lara also took a ladder, which was borrowed. The ladder was not available the second time he went to work at Metro. These tools were simple, and not specialized or particularly expensive or unique, and Lara did not even own some of them. Thus, there was no evidence Lara made a substantial investment in tools, especially considering he had been working for 25 years.

### e. *Whether the length of time for which the services were performed is a relevant factor.*

The fifth factor to consider is whether the length of time for which the services were performed is a relevant factor. In *Borello*, the sharefarmers worked the "cucumber season." The cucumber growing cycle is 60 days and the sharefarmers work about two to three weeks. Some families returned for several years in a row, which was a common practice with sharefarmers. (*Borello, supra*, 48 Cal.3d at p. 347.)

The majority in this opinion found Lara worked for a circumscribed period with no permanence in his working relationship with Metro. But permanence is not required to "render service" and a person rendering service is presumed an employee. (§ 3357.) Moreover, Lara's work was also cyclical, just as the work of the sharefarmers, which depended on the plant growing cycle. Lara worked at Metro twice. The second time he worked at Metro was at about the same time of the year he worked there previously. Just as the availability of work for sharefarmers depended on the harvest, Lara's gardening work depended on when the bushes needed trimming again.

### f. *Whether the compensation paid was determined by the time or by the job.*

The sixth factor to consider is whether the compensation paid was determined by the time or by the job. In *Borello*, the sharefarmers were paid on a percentage of the amount received when the crops were sold, regardless of the number of hours it took to get the cucumbers to harvest. (*Borello, supra*, 48 Cal.3d at pp. 346–347.) The sharefarmers paid their own taxes.

In the instant case, the Board found the calculation of compensation for Lara was based upon the performance of a specific job, which is customary for numerous tradespeople such as plumbers, masons or carpenters, who act

as independent contractors. However, Lara provided unrebutted testimony he was paid by the hour, not by the job at Metro, and at other job assignments he had with other clients. Lara was paid $15 an hour or sometimes he contracted for the day at about $50. There was no opportunity for profit or loss, Lara was simply paid by the hour. Also, had Lara been an independent contractor, he would have been obligated to finish the job. Lara never returned to Metro to finish the job after his fall.

g. *Whether the work was part of the regular business of the principal.*

The seventh factor to consider is whether the work was part of the regular business of the principal. Borello was a grower that planted and sold its crops. The court found that Borello controlled the agricultural operation and picking the crop was only one step in the process of production. The court found that Borello chose to accomplish one step in the production of the cucumber crop by worker incentives rather than direct supervision, but retained all necessary control of the process. (*Borello, supra*, 48 Cal.3d at p. 345.)

In the instant case, the Board found Lara's occupation as a gardener was distinct from Metro's business as a restaurant. Yet, at the same time, the Board acknowledged that trimming the bushes was of benefit to Metro in that it resulted in an improved appearance for the diner, therefore, arguably part of the regular maintenance of the business.

h. *Whether the parties believe they are creating an employer/employee relationship.*

The eighth factor to consider is whether the parties believe they are creating an employer/employee relationship. The written contractual agreement identified Borello as the principal and the sharefarmers as independent contractors. The agreement stated further the sharefarmers were self-employed, taxes would not be withheld from payment, the sharefarmers would have to file separate tax returns, and that Borello would not provide workers' compensation or disability insurance. (*Borello*, 48 Cal.3d at pp. 346–347.) However, *Borello* determined "[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." (*Id.* at p. 349.)

The Board, in the instant case, opined there was no evidence the parties believed they were creating an employer/employee relationship. However, Broffman never met or otherwise communicated with Lara. Lara testified, without contradiction, that he worked at Metro twice. On both occasions he

went to Metro at the request of Patricia Arache (Patricia), who was married to the manager of Metro, Nabil Arache (Nabil). All communication in connection with Lara's services was through Patricia. Lara understood from Patricia that her husband, Nabil, was the owner of Metro. Broffman, acting in propria persona on behalf of Metro, called neither Patricia nor Nabil to testify at trial as to what type of relationship they were creating, or the nature and extent of the directions given to Lara as to the job, such as how much to trim the bushes. Finally, Lara testified, on cross-examination by Broffman, that "On March 11, 2000, he was not self-employed."

The majority notes that in a response to an interrogatory, Lara stated he was a self-employed gardener. However, the rest of the response was omitted from the majority opinion, which stated: "However, Patricia whose husband owns Metro diner owner [*sic*] hired my services at the time." The interrogatories themselves were not in evidence nor were all the responses, only one page therefrom.

> 5. *Inferences from the secondary employment factors set forth in* Borello, *support a finding of employment.*

Thus, contrary to the majority's assertion the facts are undisputed and only one inference may be drawn from them, the above discussion provides a direct contradiction to many facts asserted by the majority and/or a reasonable and plausible alternative inference. Other than the ability to work without supervision, Lara did not exhibit characteristics, which based on *Borello*, would have supported the finding he was an independent contractor. The workers' compensation statutes are to be construed liberally in favor of awarding compensation. (§ 3202.) Metro had the burden of proof that Lara was an independent contractor and did not carry this burden of proof by a preponderance of evidence. (§ 3202.5.)

> 6. *The legislative intent and public policy of the workers' compensation laws are for the protection of a class of workers to which Lara belongs.*

In workers' compensation law, the inquiry is which injuries to the employee should be insured against by the employer. (*Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 778 [100 Cal.Rptr. 377, 494 P.2d 1].) The workers' compensation statutes are to be construed liberally in favor of awarding compensation. (§ 3202.) Part of the analysis by *Borello* as to the determination of the employment status of the sharefarmers included a consideration that if Borello were not the employer, they themselves and the public at large would have to assume the entire financial burden when injuries occur. (*Borello, supra,* 48 Cal.3d at p. 358.) The court concluded the

sharefarmers were the class of workers for which the protections of workers' compensation law were intended. (*Ibid.*)

The determination of an employment status for purposes of workers' compensation statutes cannot be determined simply based on contract or common law concepts of employment, but rather on the history and fundamental purposes underlying the workers' compensation statutes. (*Laeng v. Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 777.) The fundamental purpose of the statutes is to protect individuals from any special risk of employment. (*Id.* at p. 774.) The test must take into consideration the remedial purpose of workers' compensation laws, the class of persons intended to be protected, and the relative bargaining positions of the parties. (*Ibid.*)

*Borello* discussed the purpose and policy in the presumption of an employment relationship when a worker renders service for another. (§§ 3351, 3357.) "The purposes of the Act are several. It seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. . . ." (*Borello, supra,* 48 Cal.3d at p. 354.) Further, *Borello* noted the exclusion of independent contractors from workers' compensation benefits was applicable to situations where the negligence was not at issue and liability was best imposed on the worker who had control over how the work was done, and in particular, had primary power over work safety and could distribute the risk and cost of injury as an expense of his own business. (*Ibid.*)

The illustration of the balance of the factors to consider in the policy can be seen in two Court of Appeal cases, which we asked the parties to address. Significantly, the majority did not discuss both cases, only one where the worker was found to be an independent contractor.

a. *Torres v. Reardon.*

In *Torres v. Reardon* (1992) 3 Cal.App.4th 831 [5 Cal.Rptr.2d 52] (*Torres*), the worker, Torres, was hired by the Reardons to trim a large tree in their yard. The means by which Torres was to accomplish the task were not discussed. While he was working, a next-door neighbor of the Reardons' came outside to hold a rope that was tied to the branch being cut in order to ensure that it did not fall on his roof. Torres was wearing a safety belt around his waist, but it was not attached to the tree because the line was not long enough. According to Torres, when the neighbor pulled the rope, he was not

expecting it and the chain saw kicked back causing Torres to fall from the tree. He landed on his back and was rendered a paraplegic as a result of the fall.

Torres contended he was an employee on the date of the accident, not an independent contractor. The court considered Torres had established a gardening business named Jose Torres Gardening Service. Torres had a substantial investment in the business including a truck and equipment, including safety equipment. He had employees. Based on these criteria, this court held Torres was an independent contractor.

### b. *Johnson v. Workmen's Compensation Appeals Board.*

On the other hand, in *Johnson v. Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 318 [115 Cal.Rptr. 871] (*Johnson*), a "cleaning maid" who worked for homeowners, the Sokols, was asked by them to clean a vacant apartment, which they rented. The maid, Ida Johnson (Johnson), charged $16 a day for cleaning. On the date of injury, Mr. Sokol took Johnson to the vacant apartment, told her what to clean, and provided cleaning equipment. There was no discussion as to which of them had the right to control the details of the work. (*Id.* at p. 321.) Included with the equipment was a ladder, which broke as Johnson descended from cleaning the ceiling, causing injury.

The court held Johnson was an employee for purposes of workers' compensation coverage. The court determined the facts were not in dispute and that evidence on the right of control was so meager it was insufficient to meet the prospective employer's burden of proof. (*Johnson, supra,* 41 Cal.App.3d at p. 321.) The court considered the purpose of the statute, the intent of the Legislature as to the persons sought to be protected, the relative bargaining position of the parties, and whether Johnson was in the class of persons intended to be protected. (*Id.* at p. 322.) The court found workers' compensation law was aimed at protecting persons such as Johnson. Johnson was a cleaning woman, and it was her sole means of livelihood. She was cleaning an apartment, and not a private house. The court opined that as a cleaning woman, she would likely not be as sophisticated and assertive as a businessman who owns or manages apartments. (*Ibid.*) The court held the Sokols did not meet their burden of proof to rebut the presumption Johnson was an employee. (*Id.* at p. 321.)

### 7. *Conclusions.*

One seeking to avoid liability has the burden of proving the person claiming to be an employee is an independent contractor instead of an employee. The question before this court is whether Metro met its burden. I

find that there was such a paucity of evidence presented by Metro as to the right of control or the details of the working arrangement that it was insufficient to meet the burden of proof required to support a finding Lara was an independent contractor.

Metro did not present evidence as to who had the right to control the details of the work, such as how far to trim the bushes. The inference from Lara's statement he knew what to do, could easily refer to the assigned job, not that he was not told which bushes to prune, how short to prune them, and when to go to the job assignment. Moreover, "it is the right to control, not the exercise of the right, which bears on the status of the work arrangement." (*Borello, supra,* 48 Cal.3d at p. 357, fn. 9.)

Also, as illustrated in *Johnson, supra,* 41 Cal.App.3d 318, the relative bargaining power and sophistication between the parties is a relevant consideration. The difference between Lara and Broffman was disparate. Broffman, owner and substantial shareholder of Metro, is an attorney who had practiced law for about 20 years at the time of the trial. He practices civil litigation, including restaurant law, contract law, and personal injury. Yet he was uninsured for workers' compensation at the time of the injury.

Additionally, being self-employed, as seen in *Johnson, supra,* 41 Cal.App.3d 318, is not the only criterion to consider as to whether a worker was an employee or an independent contractor. Other secondary factors of employment, as set forth in *Borello,* would also support a finding Lara was an employee and not an independent contractor.

Furthermore, the test of whether a worker is an employee or an independent contractor must be applied with deference to the purposes of the protections of workers' compensation laws. (*Borello, supra,* 48 Cal.3d at p. 353.) A discussion of policy considerations was not included in the majority opinion; however, it was a primary consideration in the determination made by the court in *Borello.* As stated in *Borello,* "[a] conclusion that the sharefarmers are 'independent contractors' under the Act would suggest a disturbing means of avoiding an employer's obligations . . . intended for the protection of 'employees.' " (*Id.* at p. 359.) The facts demonstrate Lara is a person contemplated by the workers' compensation law to be protected at the time of his injury at Metro. One who is an unskilled laborer, whose work is simple and not usually supervised, who does not have significant investment in equipment, who is not licensed, who is paid by the hour a wage that would not support buying insurance, and who had no control over his safety.

For these reasons, I dissent and would hold Metro did not sustain its burden of proof Lara was an independent contractor, and I would annul the Board's opinion and remand this case to the trial level to proceed consistent with this opinion.

Petitioner's petition for review by the Supreme Court was denied June 9, 2010, S181497.